UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **TERRY BOUTTE, JR.** | § | **CIVIL ACTION NO.** |
| | § | **4:22-CV-00948** |
| | § | |
| **VS.** | § | **DISTRICT JUDGE:** |
| | § | **KENNETH M. HOYT** |
| | § | |
| **JACKSON OFFSHORE OPERATORS,** | § | |
| **LLC, AND CHEVRON U.S.A. INC.** | § | |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
INDEPENDENT PSYCHIATRIC EXAMINATION,
VOCATIONAL REHABILITATION INTERVIEW AND
LIFE CARE PLAN INTERVIEW OF PLAINTIFF, TERRY BOUTTE, JR.**

Defendants, Jackson Offshore Operators, LLC and Chevron U.S.A. Inc. ("Defendants"),
respectfully submit the following memorandum in support of their Motion to Compel Independent
Psychiatric Examination, Vocational Rehabilitation Evaluation Interview and Life Care Plan
Interview of Plaintiff, Terry Boutte, Jr.

Plaintiff sustained an injury to his non-dominant (left) hand, ultimately resulting in a partial
amputation of his left pinky finger, while serving as the Master of the M/V CAJUN IV on
December 5, 2021.[1]  Plaintiff was released to return to work without restriction by his treating
physician, Dr. Idris Gharbaoui, on May 4, 2022, approximately six months after his accident.
Although he has been released without restrictions by his treating physician, Plaintiff subsequently
claimed he is totally and permanently disabled from returning to work because of mental and
emotional injuries.  Plaintiff further asserts that as a result of these purported mental and emotional

---

[1] *See* medical records of Dr. Idris Gharbaoui dated December 17, 2021, January 3, 2022, January 4, 2022,
January 12, 2022, January 25, 2022, March 4, 2022, May 4, 2022 and Medical Treatment Form dated
August 26, 2022 collectively attached hereto as **Exhibit 1.**

injuries, his earning capacity and future medical expenses have been adversely affected.[2]  The only basis for Plaintiff's claim for long-term loss of wages is his purported mental and emotional injuries.[3] And yet, he refuses to submit to an Independent Medical Examination by a psychiatrist, which is why Jackson Offshore and Chevron are filing the current motion.

Plaintiff is currently being treated by no fewer than four mental health professionals and has also engaged a life care plan expert and an expert economist to opine regarding the medical, economic and vocational effects of the alleged mental and emotional injuries.[4] Plaintiff's mental health professionals and life care plan expert have opined that Plaintiff's alleged mental injuries caused by the partial pinky amputation prevent him from returning to work of any kind.[5]  In spite of Plaintiff's clear reliance on the opinions of the mental health professionals and experts chosen for him by his attorneys, he refuses to submit to an independent psychiatric evaluation or be interviewed by Defendants' expert life care plan or vocational rehabilitation experts. Plaintiff's continued refusal to participate in the requested interviews and psychiatric examination unfairly prejudices Defendants' ability to obtain evidence supporting their defenses against Plaintiff's claims.

## I.   BACKGROUND

### A.  The Accident

Plaintiff injured his non-dominant hand on December 5, 2021, while working as the Master

---

[2] *See* Rec. Doc. No. 1-2.
[3] *See* Rec. Doc. No. 1-2.
[4] *See* Plaintiff's expert designations attached hereto as **Exhibit 2**; *see also* medical record of Dr. Hayes dated July 5, 2022 attached hereto as **Exhibit 3**; medical record of LPC Cosima Robinson dated December 10, 2021, attached hereto as **Exhibit 4**; medical record of Henry Johnson dated March 22, 2022 attached hereto as **Exhibit 5**; medical record of LPC Kimberly Simms dated April 13, 2022, attached hereto as **Exhibit 6**; and Life Care Plan of Dr. Todd Cowen dated December 20, 2022 attached hereto as **Exhibit 7.**
[5] *See e.g.,* deposition transcript of LPC Cosima Robinson at p. 36:2-20 attached hereto as **Exhibit 8**.

of the M/V CAJUN IV, an offshore supply vessel operated by Jackson Offshore.[6] Although Plaintiff was the designated master of the M/V CAJUN IV,[7] he insists that his fellow crewmembers were solely in control of the vessel operations at the moment of his accident, and he was merely serving as a deckhand with no authority to prevent the accident. However, Plaintiff's specific work duties at the time of the accident do not erase his twenty-years' experience as a vessel captain nor all of the many certifications he received in rigging, including how to identify and avoid pinch points.[8]

The M/V CAJUN IV is normally crewed by two wheelman and four deckhands.  At the time of the accident, however, the crew consisted of three navigation officers (Plaintiff as the master, Darryl Watkins as relief captain and Charles Wheat as pilot) and three deckhands.[9] Watkins and Plaintiff had been alternating navigation and deck duties.[10] On the day of the accident, Plaintiff volunteered to assist with deck duties leaving Watkins at the Vessel's controls.[11] Plaintiff maintains that because he volunteered to perform deck duties, he was somehow demoted from his position as master of the vessel.

As part of fuel transfer operations from the M/V CAJUN IV to the platform, a crane operator lowered a fuel hose down from the Genesis Platform to the deck of the M/V CAJUN IV. At some point during the fueling process, the Vessel had been pushed out of its original position by changing sea conditions, and the decision was made to cease the fueling operation in order to allow the Vessel to reposition. Plaintiff was aware that the Vessel was having difficulty

---

[6] *See* Rec. Doc. No. 1-2.
[7] *See* deposition transcript of Jackson Offshore through its corporate representative Mark Dawson at p. 45:3-21 attached hereto as **Exhibit 9**.
[8] *See* transcript of deposition of Plaintiff, Terry Boutte, Jr. at pp.60:5-64:10 attached hereto as **Exhibit 10.**
[9] *See* deposition transcript of Jackson Offshore through its corporate representative Mark Dawson at p. 61:8-21 attached hereto as **Exhibit 9**.
[10] *Id.*
[11] *See* transcript of deposition of Plaintiff Terry Boutte at pp. 80:22-81:24 attached hereto as **Exhibit 10.**

maintaining its position and assisted in disconnecting the fuel hose so it could be retrieved back to the Genesis Platform by the crane operator.

As the crane operator lifted the fuel hose, it became caught on the top of a tote tank located on the deck of the M/V CAJUN IV. Plaintiff attempted to free the hose from the tote tank using his left hand. In the process, his left hand became pinned between the fuel hose and the tote tank, which injury eventually lead to the partial amputation of his left pinky finger.

### B.  Medical treatment of Plaintiff's left-hand injury

Plaintiff reported his injury to Captain Watkins, who immediately requested that the GENESIS medic board the Vessel and evaluate the injury.[12]  The medic examined and bandaged Plaintiff's left hand and arranged for Plaintiff to be medically evacuated by helicopter to West Jefferson Medical Center.[13] There, Plaintiff was treated by Dr. Barton L. Wax, an orthopedic surgeon specializing in hand injuries, who performed surgery that same day in an effort to save Plaintiff's pinky finger.[14]

Plaintiff returned to see Dr. Wax on December 13, 2021.[15]  Dr. Wax noted that the attempted left pinky finger replant performed on December 5, 2021, was unsuccessful and recommended partial amputation of the left pinky finger.  Plaintiff sought a second opinion by Dr. Idris Gharbaoui in Houston, Texas, but Dr. Gharbaoui agreed that amputation was appropriate. The amputation was performed by Dr. Gharbaoui on January 4, 2021. Dr. Gharbaoui performed a second surgery on Plaintiff's left hand on January 25, 2022, to separate the flap of the left ring and small fingers, complete secondary closure of the left ring and small fingers and debridement of the

---

[12]*See* transcript of deposition of Plaintiff Terry Boutte at pp. 140:17-141:7 attached hereto as **Exhibit 10**.
[13] *Id.*
[14] *See* medical records of Dr. Barton L. Wax dated December 5, 2021 attached hereto as **Exhibit 11**.
[15] *See* medical records of Dr. Barton L. Wax dated December 13, 2021 attached hereto as **Exhibit 11**.

wound.[16] Dr. Gharbaoui noted that Plaintiff tolerated the procedure well with no complications and referred him to physical therapy to improve mobility.[17]

Plaintiff attended physical therapy from February 15, 2022 through March 22, 2022, for a total of seven sessions, following which the physical therapist noted that Plaintiff "has made remarkable improvement with AROM, grip and pinch strength." [18] Meanwhile, unbeknownst to the defendants, Dr. Gharbaoui or the physical therapists, Plaintiff was referred by his attorneys to Dr. Geremy Sanders, a pain management physician.

In stark contrast to the positive reports and progress he provided to Dr. Gharbaoui and the physical therapist, Plaintiff told Dr. Sanders that he was experiencing pain in his left hand at a level between 3/10 and 9/10 with a daily average of 6/10.[19] For example, on March 4, 2022, only one day after seeing Dr. Sanders, Plaintiff returned to Dr. Gharbaoui,[20] reporting he "has been doing very well and is very pleased with his outcome." Plaintiff did not tell Dr. Gharbaoui that he had sought treatment from Dr. Sanders or that he was experiencing any pain in his left hand.[21]  And yet, Plaintiff returned to Dr. Sanders on April 7, 2022 with further complaints of continuous aching pain in his left hand.[22]  Dr. Sanders recommended Plaintiff undergo a spinal cord stimulator trial to address his alleged left hand pain.[23]  Again, Plaintiff pursued treatment with Dr. Sanders in secret, without disclosing it to any of his other physicians.

---

[16] *See* medical records of Dr. Idris Gharbaoui dated January 25, 2022 attached hereto as **Exhibit 1.**
[17] *Id*.
[18] *See* records from Ironman Sports Medicine Institute at The Woodlands dated March 22, 2022 attached hereto as **Exhibit 12**.
[19] *Id*.
[20] *See* medical records of Dr. Idris Gharbaoui dated March 4, 2022 attached hereto as **Exhibit 1**.
[21] *Id*.
[22] *See* medical records of Dr. Geremy Sanders dated April 7, 2022 attached hereto as **Exhibit 13**.
[23] *Id.*

Plaintiff returned for his final appointment with Dr. Gharbaoui on May 4, 2022.[24] Dr. Gharbaoui noted Plaintiff was "overall very pleased with his outcome." At no point during this appointment did Plaintiff tell Dr. Gharbaoui that Dr. Sanders had recommended he undergo a spinal cord stimulator trial or that he had continuing pain in his left hand.[25] On August 26, 2022, Dr. Gharbaoui completed a Maximum Medical Improvement/Medical Treatment Form stating that Plaintiff reached maximum medical improvement as of May 4, 2022 and could return to work without restrictions as of that date.[26] Importantly, on March 22, 2022, two months after his successful second surgery with Dr. Gharbaoui, and at his attorneys' recommendation, Plaintiff commenced treating his alleged mental and emotional injuries at Elite Medical Wellness in Lake Charles, Louisiana.[27] Like the referral to Dr. Sanders, this treatment was also conducted in secret. Defendants did not learn that Dr. Hayes had concluded that Plaintiff was temporarily disabled as a result of his mental and emotional injuries and could not return to work until December 16, 2022.[28] Plaintiff waited to provide Defendants with Dr. Hayes' medical records until almost four months after they received the MMI report from Dr. Gharbaoui indicating that Plaintiff could return to work without restrictions. Only when Jackson Offshore noted that Plaintiff had reached MMI, did Plaintiff produced records of Dr. Hayes psychiatric evaluation, and then and only then did he claim for the first time that he was disabled from working by virtue of mental and emotional injuries.

---

[24] *See* medical records of Dr. Idris Gharbaoui dated May 4, 2022 attached hereto as **Exhibit 1**.

[25] *Id.*

[26] *See* Maximum Medical Improvement/Medical Treatment Form dated August 26, 2022 attached hereto as **Exhibit 14**.

[27] *See* medical records of Henry Johnson, FPMHNPBC dated March 22, 2022 attached hereto as **Exhibit 5**.

[28] *See* email correspondence from Plaintiff's counsel to Defendants dated December 16, 2022 attached hereto as **Exhibit 15**.

**C.**     **Plaintiff has received extensive treatment for his alleged mental and emotional injuries and intends to present the testimony of multiple mental health professionals and a life care plan expert at trial.**

Plaintiff has consistently and repeatedly alleged he sustained mental and emotional injuries associated with the December 5, 2021 accident starting with his Original Petition for damages filed in Texas State Court on February 8, 2022, and continuing through his most recent Amended Complaint filed on September 19, 2022.[29] Plaintiff reiterated his claims for mental and emotional injuries during his January 3, 2023 deposition:

> Q.     Do you feel you could return to work right now, sir?
>
> A.     No, sir.
>
> Q.     Why not?
>
> A.     Just beside the mental part, the pain that I go through on a daily basis, it would hinder me from fulfilling my duties at my job.  Like I said, just the matter of times I wax bathe my hand, ice my hand, you know massage—put my hand in the massager, I thing that would all interfere with me going back to work—not including, like I said, the mental part of me—of me doing my job.[30]

Plaintiff has also produced hundreds of pages of medical records from no fewer than four mental health professionals including:

1.   Licensed Professional Counselor, Cosima Robinson, who has treated Plaintiff for "trauma, anxiety, anger."[31]

---

[29] *See* Rec. Doc. 1 and Rec. Doc. 28.  Notably, Plaintiff does not directly relate or limit his claim for mental and emotional injuries to those arising from the physical injury to his left hand and subsequent partial amputation of his left pinky as required under Fifth Circuit precedent. *See Ainsworth v. Penrod Drilling Corp.,* 972 F.2d 546 (5th Cir.1992) (affirming district court's dismissal of claims for purely emotional injury under the Jones Act and finding that the emotional injury must result from the physical contact). As such, Defendants contend that most, if not all of Plaintiff's claims for mental and emotional injuries are not compensable.

[30] *See* transcript of deposition of Plaintiff Terry Boutte at pp. 33:23-34:9 attached hereto as **Exhibit 10**.

[31] *See* medical record of LPC Cosima Robinson dated December 10, 2021, attached hereto as **Exhibit 4**.

2. Licensed Professional Counselor, Kimberly Simms, who has treated Plaintiff for "panic attacks, avoidance behaviors, sleep disturbance and poor self-concept."[32]

3. Psychiatrist Patrick Hayes, who completed a comprehensive psychiatric assessment of Plaintiff including "the collection of blood pressure, pulse, oxygen saturation, and temperature values", "a direct interview which lasted roughly 100 minutes" and "five self-report psychometric measures and a social and medical history form." Dr. Hayes diagnosed Plaintiff with: "(1) Post-traumatic Stress Disorder; (2) Depressive Disorder Due to Left-Hand Crush Injuries with Left Fifth-Digit Amputation with Major Depressive-Like Episode; (3) Insomnia Disorder; (4) Male Erectile Dysfunction; (5) Chronic Regional Pain Syndrome; and (6) Phantom Limb Syndrome with Pain."[33]

4. Family Psychiatric Mental Health Nurse Practitioner Henry Johnson, who has treated Plaintiff for "increased nervousness, panic attacks, fractured sleep, sadness, irritability, agoraphobia, and anhedonia" allegedly caused by the December 5, 2021 incident.[34]

Plaintiff has specifically designated the above individuals as "non-retained experts" and reserved the right to present their testimony at trial:

> [T]o permit the Plaintiff the opportunity to introduce evidence from these individuals which might be deemed in the nature of opinion or expert testimony. Specifically, these individuals may testify about Plaintiff's injuries, care, treatment, causation, physical restrictions,

---

[32] *See* medical record of LPC Kimberly Simms dated April 13, 2022 attached hereto as **Exhibit 6.**

[33] *See* medical record of Dr. Patrick Hayes dated July 5, 2022 attached hereto as **Exhibit 3**. Notably, Dr. Hayes does not opine as to whether or which specific mental and emotional injuries alleged by Plaintiff result directly from the left hand injury and partial amputation of the left pinky finger. By way of example, Dr. Hayes does not clarify whether or how Plaintiff's diagnosis of male erectile dysfunction is related to his hand injury.

[34] *See* medical record of Family Psychiatric Mental Health Nurse Practitioner Henry Johnson dated March 22, 2022 attached hereto as **Exhibit 5**. Like Dr. Hayes, Mr. Johnson also fails to explain how Plaintiff's psychiatric symptoms are related to his left hand injury.

prognosis, diagnosis, and the need for and reasonable costs for past
and future medical care.[35]

In addition, Plaintiff designated Dr. Todd Cowen as a life care plan expert witness to testify regarding "Plaintiff's injuries, medical care, treatment diagnosis, prognosis, causation, physical restrictions, reasonable costs for medical care in the past and future and the need, if any for future treatment."[36]   In his report Dr. Cowen opines that Plaintiff suffers from a number of diagnostic conditions related to the December 5, 2021 accident, including "anxiety, depression, and symptoms suggestive of post-traumatic stress disorder" and "chronic pain syndrome with ongoing pain, psychological symptoms and sleep disturbance.[37]   Dr. Cowen further opines that Plaintiff will need antidepressant medication for the rest of his life and recommends Plaintiff be treated by a licensed professional counselor, undergoes a vocational evaluation and vocational counseling concluding that Plaintiff has "decreased physical function affecting a loss of vocational capacities/opportunities."[38]

Among the information Dr. Cowen used to reach his conclusions regarding Plaintiff's diagnoses, medical causation and lifecare plan, was an extensive in-person interview with Plaintiff which covered: (1) the history of Plaintiff's injury/illness; (2) a review of Plaintiff's symptoms; (3) Plaintiff's past medical history; (4) Plaintiff's past surgical history; (5) Plaintiff's allergens and use of drugs; (6) Plaintiff's medications; (7) Plaintiff's social history; (8) Plaintiff's professional/work history; (9) Plaintiff's use of tobacco, alcohol and illicit drugs; and (9)

---

[35] *See* attached Plaintiff's designation of expert witnesses and supplemental disclosures at pp. 4-7, attached hereto as **Exhibit 2.**
[36] *Id.*
[37]*See* Life Care Plan Expert Report of Dr. Todd Cowen dated December 20, 2022 attached hereto as **Exhibit 7.**  Like Dr. Hayes and Mr. Johnson, Dr. Cowen also fails to explain how Plaintiff's psychiatric symptoms are related to his left hand injury.
[38] *Id.*

Plaintiff's avocational activities.[39]   In addition, Dr. Cowen performed a thorough physical examination of Plaintiff.

In light of the above described medical records and expected expert testimony on behalf of Plaintiff at trial, Defendants have on multiple occasions requested that Plaintiff submit to an independent psychiatric examination by Dr. George S. Glass,[40] an interview with expert life care planner Bryan Muench[41] and an interview with vocational rehabilitation expert Robert Cox.[42] To date, Plaintiff has refused to submit to the requested psychiatric examination and has flatly ignored Defendants' requests the he participate in a life care plan and a vocation rehabilitation evaluation interview.

### D.   Defendants' requests that Plaintiff submit to an independent psychiatric examination, a life care plan interview and a vocational rehabilitation evaluation interview

On June 9, 2023, Defendants sent a letter to Plaintiff's counsel requesting that Plaintiff submit to an interview with Expert Life Care Planner Bryan Muench, and Expert Vocational Rehabilitation Counselor, Robert D. Cox, MA, CRC, LPC-S, and providing four possible dates for each of the interviews in June 2023.[43]  Receiving no response to the June 9, 2023 letter, Defendants verbally followed up with Plaintiff's counsel regarding the requested vocational rehabilitation and life care plan interviews on July 6, 2023 and further requested Plaintiff submit to an independent psychiatric evaluation. Plaintiff's counsel responded they would make Plaintiff available if provided with the scope of the two requested interviews and the psychiatric evaluation.

---

[39] *Id.*
[40] *See curriculum vitae* of Dr. George S. Glass attached hereto as **Exhibit 16**.
[41] *See curriculum vitae* of Bryan Muench attached hereto as **Exhibit 17.**
[42] *See curriculum vitae* of Robert Cox attached hereto as **Exhibit 18.**
[43] *See* correspondence dated June 9, 2023 from Todd Crawford to Trent Shelton attached hereto as **Exhibit 19.**

Defendants sent a second letter on July 10, 2023, again requesting that Plaintiff attend an interview with Expert Life Care Planner Bryan Muench, and Expert Vocational Rehabilitation Counselor, Robert D. Cox and providing eight available days in August for an interview with Mr. Muench and seven available days in August for an interview with Mr. Cox.[44] In addition, the July 10, 2023 letter reiterated Defendants' prior verbal request that Plaintiff submit to an independent psychiatric examination by Psychiatrist George S. Glass and provided four different available dates in July for the examination.[45]

The July 10, 2023 letter provided a detailed description of the scope of the life care plan and vocational rehabilitation evaluation interviews as follows:

> The Life Care Planning interview will be conducted by Bryan Muench, MS, PT, CLCP.  It is an in-person interview, expected to last an hour and a half and will review and discuss Terry Boutte's demographics, family makeup, housing details and risk for injury, past medical history and treatment, current medical conditions and treatment, lifestyle changes since the incident, limitations and vocational history.

> *          *          *

> The Vocational Rehabilitation interview will be conducted by Robert D. Cox, MA, CRC, LPC-S and it will consist of a 45-minute interview, via Zoom, during which Mr. Cox will review Terry Boutte's employment history, past training and certifications and discuss current employment activities.[46]

Again, Defendants received no response to the July 10, 2023 correspondence regarding Plaintiff's willingness or availability to participate in the requested interviews and independent psychiatric examination.

---

[44] *See* correspondence dated July 10, 2023 from Adelaida Ferchmin to Trent Shelton attached hereto as **Exhibit 20.**
[45] *Id.*
[46] *Id.*

In an effort to clarify the scope of the evaluations completed by Plaintiff's own mental health professionals, Defendants propounded written discovery to Plaintiff on that issue on August 3, 2023.[47]  Plaintiff's discovery responses failed to provide *any* description of the scope of any mental health evaluation or treatment received by Plaintiff.[48]  Plaintiff also failed to produce *any* documents reflecting or describing the scope of any mental health evaluations administered by Plaintiff's doctors, demonstrating that no such written protocols exist.[49]In light of the complete absence of any description or written parameters of the scope of the mental health evaluations administered by Plaintiff's doctors, Defendants advised they likewise would not bind Dr. Glass to a rigid and limited evaluation protocol.[50] Rather, as an expert in the field of psychiatry, Defendants believe Dr. Glass, like Dr. Hayes, should be allowed to decide which psychiatric tests to administer and which topics to explore during his evaluation of Plaintiff.[51]

Rather than continue to obtain available dates from Dr. Glass, Mr. Muench and Mr. Cox that will be ignored by Plaintiff, Defendants respectfully move the Court for an Order compelling Plaintiff to submit to an independent psychiatric examination with Dr. Glass and to attend interviews with Mr. Muench and Mr. Cox within well in advance of Defendants' expert designation deadline, allowing Defendants to obtain evidence in support of their defenses against Plaintiff's claims and appear at trial on an equal footing with Plaintiff.

---

[47] *See* Defendants' Second Set of Requests for Admissions and Fourth Set of Requests for Production of Documents attached hereto as **Exhibit 21**.

[48] *See* Terry Boutte, Jr.'s Responses and Objections to Jackson Offshore Operators, LLC and Chevron U.S.A., Inc's Second set of Requests for Admissions and Fourth Set of Requests for Production attached hereto as **Exhibit 22.**

[49] *Id.*

[50] *See* email correspondence dated September 1, 2023 from Todd Crawford to Trent Shelton attached hereto as **Exhibit 23.** Further, Plaintiff's failure to provide any substantive responses to Defendants' written discovery further supports Defendants' contention that Plaintiff's alleged mental and emotional injuries were not caused by his left hand injury and subsequent parties amputation of his left pinky finger and are not compensable under the Jones Act.

[51] *Id.*

## II.    LAW AND ARGUMENT

Federal Rule of Civil Procedure 35(a) provides that a district court may order a party to submit to a physical or mental examination by a licensed or certified examiner if: (1) the party's "mental or physical condition is in controversy," and (2) the movant has shown "good cause" for the examination.[52]   Here, Defendants have met the requirements of Rule 35(a), and Plaintiff should be compelled to attend an independent psychiatric evaluation performed by Dr. George Glass as well as the requested interview with expert life care planner Bryan Muench and vocational rehabilitation expert Robert Cox.[53]

### A. Plaintiff has placed his mental condition, loss of earning capacity and future medical expenses in controversy.

Plaintiff has placed his mental health, loss of earning capacity and future medical expenses in controversy by asserting claims against Defendants for, among other things, mental anguish, loss of earnings, loss of earning capacity and medical hospital and pharmaceutical expenses.[54] Notably, Plaintiff does not directly relate or limit his claims for mental and emotional injuries to those arising from the physical injury to his left hand and subsequent partial amputation of his left pinky as required under Fifth Circuit precedent in order for these claims to be compensable under the Jones Act.[55]   Rather, Plaintiff makes general allegations that he has been diagnosed with post-

---

[52] *See Schlagenhauf v. Holder,* 379 U.S. 104, 118, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *see also Acosta v. Tenneco Oil Co.,* 913 F.2d 205, 208 (5th Cir.1990) (recognizing three requirements for ordering a Rule 35 examination: "(1) the party's physical or mental condition must be in controversy; (2) the expert must be either a physician or a psychologist; and (3) good cause must be shown").

[53] Defendants note that although Fed. R. Civ. P. 35 does not explicitly mention examinations or interviews by vocational rehabilitation or life care plan experts, courts in Texas and Louisiana have interpreted Rule 35 broadly to include experts in the fields of vocation rehabilitation and lifecare planning. *See e.g., Wilks v. Epic Marine, LLC,* 2003 WL 22272191 (E.D.La. Sept. 26,2003)(granting a motion to compel vocational rehabilitation evaluation); *see also Fischer v. Coastal Towing Inc.,* 168 F.R.D. 199 (E.D.Tex. 1996)(granting a motion to compel vocational rehabilitation evaluation).

[54] *See* Rec. Doc. No. 1-2.

[55] *See Ainsworth v. Penrod Drilling Corp.,* 972 F.2d 546 (5th Cir.1992) (affirming district court's dismissal of claims for purely emotional injury under the Jones Act and finding that the emotional injury must result from the physical contact).

traumatic stress disorder, depression, anxiety and insomnia and is receiving treatment and being prescribed medication for these mental health conditions.  Plaintiff further asserts that his mental health conditions prevent him from returning to work and earning wages.[56]

In *Ornelas v. Southern Tire Mart, LLC*,[57] the Court recognized that a plaintiff "can place his or her mental or physical condition in controversy through representations made during the court of litigation and that "a plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy."[58] Accordingly, Defendants have met the "in controversy" requirement of Fed, R. Civ. P. 35(a).

**B. Good cause exists to compel Plaintiff submit to an independent psychiatric examination, a life care plan interview and a vocational rehabilitation interview.**

In determining whether "good cause" exists under Fed, R. Civ. P. 35(a), courts consider factors such as: "(1) whether the examination will adduce facts necessary to the party's case; (2) the probability of obtaining the information through other sources; and (3) whether the opposing party is planning on proving its claims through expert testimony."[59] Here, the requested psychiatric evaluation, life care plan interview and vocational rehabilitation interview are necessary in order for Defendants to adequately evaluate and challenge the nature, scope and causation of Plaintiff's alleged mental and emotional injuries and resulting loss of earning capacity and future medical costs claims.

Moreover, Defendants should be allowed to have their own experts conduct an evaluation

---

[56] *See* transcript of deposition of Plaintiff Terry Boutte at p. 136:12-18 attached hereto as **Exhibit 10.**

[57] *Ornelas v. Southern Tire Mart, LLC,* 292 F.R.D. 388 (S.D.TX 2013).

[58] *Id*. at 391. ("Alternatively, the plaintiff can place his or her mental or physical condition in controversy through representations made during the course of litigation. There are situations where the pleadings alone are sufficient to establish the "in controversy" requirement. *Schlagenhauf,* 379 U.S. at 119, 85 S.Ct. 234. "A plaintiff in a negligence action who asserts mental or physical injury...places that mental or physical injury clearly in controversy...." *Id.* (internal citations omitted).)

[59] *Rivas v. Lowes Home Centers LLC,* No. EP-17-CV-356-KC, 2018 WL 7348033, at *1 (W.D. Tex. July 17, 2018).

of Plaintiff to rebut the anticipated testimony of Plaintiff's retained and "non-retained" expert witnesses.  Otherwise, Defendants' experts have no way to adequately scrutinize and challenge the conclusions of Plaintiff's experts.  While the ability to obtain information related to Plaintiff's mental health condition, future earning capacity and future medical costs, through other sources is relevant to the "good cause" inquiry, Plaintiff may not avoid a Rule 35 examination solely on the grounds that "other sources of information, such as medical reports and depositions of plaintiff's treating physicians, are available."[60]  Indeed, courts routinely look to whether a plaintiff has retained his own experts and intends to prove his claims through their testimony at trial, as relevant to a finding of "good cause."[61]  This is largely because "one purpose in granting a request for a[n] ... examination pursuant to Rule 35 is to 'preserve the equal footing of the parties.'"[62]

Trial of this matter will be presented to a jury.  As such, there is a greater risk that Defendants will be prejudiced at trial if their experts are prevented from evaluating Mr. Boutte in person, while Plaintiff presents the expert testimony of four mental health professionals and an expert life care planner, all of whom evaluated Plaintiff in person on multiple occasions. Rule 35(a) examinations are meant to avoid exactly this type of unequal footing between the parties at trial.

---

[60] *Fischer v. Coastal Towing Inc.,* 168 F.R.D. 199, 200 (E.D.Tex.1996);  *Jackson v. Entergy Operations, Inc.,* Nos. Civ.A. 96–4111, Civ.A. 97–0943, 1998 WL 28272, at *2 (E.D.La. Jan. 26, 1998); *Ferrell v. Shell Oil Co.,* Civ. A. No. 95–0568, 1995 WL 688795, at *1 (E.D.La. Nov. 20, 1995).

[61] *See, e.g.,  Duncan v. Upjohn,* 155 F.R.D. 23, 25 (D.Conn.1994).

[62] *Duncan,* 155 F.R.D. at 25 (quoting *Tomlin v. Holecek,* 150 F.R.D. 628, 633 (D.Minn.1993); *see also McDonald v. Southworth,* No. 1:07–cv–217–JMS–DFH, 2008 WL 2705557, at *4 (S.D.Ind. July 10, 2008) (finding that although "a court may be reluctant to subject a plaintiff to lengthy, invasive" testing, because "the plaintiff is the one who initiates the action and seeks damages ... it would not be fair to permit a plaintiff to routinely rely on the very condition of which he complains to defeat a defendant's ability" to disprove the plaintiff's allegations) (internal citations and quotation marks omitted); *Bethel v. Dixie Homecrafters, Inc.,* 192 F.R.D. 320, 322–23 (N.D.Ga.2000) (quoting *Ali v. Wang Labs., Inc.,* 162 F.R.D. 165, 168 (M.D.Fla.1995)).

**C. Rule 35 does not require prior disclosure of the specific tests that may be administered during an independent psychiatric examination.**

Plaintiff's counsel has suggested that the requested psychiatric examination, life care plan interview and vocational rehabilitation interview are unreasonable in scope and are unduly burdensome. Plaintiff has not specified how or why Defendants' requests are overbroad or unreasonable. Indeed, having refused to provide any information regarding the scope of the psychiatric examination performed by Dr. Hayes or the scope of the life care plan interview administered by Dr. Cowen, Defendants cannot compare whether any particular scope would place the parties on equal footing.[63] Moreover, Defendants should be allowed to explore whether Plaintiff's alleged mental and emotional injuries were caused by the physical injury to his left hand and subsequent partial pinky amputation, his involvement in the accident in general or some other cause.[64] This case may present an opportunity for the courts to clarify whether a Jones Act Plaintiff is limited to mental health injuries directly associated with the physical injury or something broader.

Defendants recognize that Federal Rule of Civil Procedure 35(a)(2)(B) provides that an order compelling a party to submit to a mental examination "must specify the time, place, manner, condition and scope of the examination, as well as the person or persons who will perform it."[65] Here, Defendants have offered Plaintiff a number of available dates for the requested psychiatric evaluation and life care plan and vocational rehabilitation interviews, specifying the time and place

---

[63] *See* Terry Boutte, Jr.'s Responses and Objections to Jackson Offshore Operators, LLC and Chevron U.S.A., Inc's Second Set of Requests for Admissions and Fourth Set of Requests for Production attached hereto as **Exhibit 22.**

[64] *See Ainsworth v. Penrod Drilling Corp.,* 972 F.2d 546 (5th Cir.1992) (affirming district court's dismissal of claims for purely emotional injury under the Jones Act and finding that the emotional injury must result from the physical contact).

[65] Fed. R. Civ. P. 35(a)(2)(B).

for each.[66]   In addition, Defendants provided Plaintiff with a detailed description of the scope of the life care plan and vocational evaluation interviews.[67]

Defendants' requested psychiatric evaluation is also reasonable under the circumstances. Dr. George Glass is a board certified and experienced psychiatrist licensed to practice in Texas.[68] Specifically, Defendants requests the scope of the psychiatric examination include inquiry into: (1) any mental or psychiatric symptoms or injuries Plaintiff claims are attributable tohis left hand injury and subsequent partial amputation of his pinky finger, (2) Any other potential causes for Plaintiff's alleged mental and emotional injuries; (3)Plaintiff's social, family, employment, and medical history; and (4) Any  behaviors or symptoms that may impact or affect Plaintiff's alleged mental or emotional injuries.

In addition, Defendants request that Dr. Glass be allowed to use his expert medical knowledge to select and administer any of the  widely recognized psychiatric tests he deems relevant to properly evaluate Plaintiff's alleged mental and emotional injuries.  Defendants note that Plaintiff's expert psychiatrist Dr. Patrick Hayes selected and administered at least six different psychiatric tests during his evaluation of Plaintiff without any prior notice to or consultation with Defendants, or any advance notice to the Plaintiff, for that matter.[69]   Defendants' request that Dr. Glass be granted the same ability as Dr. Hayes to use his expert judgment to select the tests he determines are most relevant and helpful in evaluating Plaintiff's psychiatric condition.

---

[66] *See* Correspondence dated June 9, 2023 from Todd Crawford to Trent Shelton attached hereto as **Exhibit 19** and correspondence dated July 10, 2023 from Adelaida Ferchmin to Trent Shelton attached hereto as **Exhibit 20.**
[67] *See* correspondence dated July 10, 2023 from Adelaida Ferchmin to Trent Shelton attached hereto as **Exhibit 20.**
[68] *See curriculum vitae* of Dr. George Glass attached hereto as **Exhibit 16.** Defendants note that Plaintiff's expert psychiatric Dr. Patrick Hayes is located in Lake Charles, Louisiana and does not appear to practice in Texas.
[69] *See* medical record of Dr. Patrick Hayes dated July 5, 2022 attached hereto as **Exhibit 3.**

Numerous courts have held that the specific tests to be administered during the mental health evaluation do not have to be disclosed to Plaintiff in advance "because the mental examination provides one of the few opportunities for a defendant to have access to a plaintiff, and the only opportunity for a defendant to have a plaintiff examined by defendant's expert, some preference should be given to allowing the examiner to exercise discretion in the manner and means by which the examination is conducted, provided it is not an improper examination".[70]  As this Court recognized in *Ornelas v. Southern Tire Mart,* "to 'intervene and limit the type of examination[s] an expert [indicates] is necessary' to adequately determine the nature and extent of Plaintiff's injuries, as such intervention 'would subvert the truth finding [sic] function inherent in Rule 35 examinations,'"[71]   In *Ornelas*, the Court ultimately held that providing a list of the potential "universe of tests" to be administered is sufficient to meet the scope requirement under Rule 35(a)(2)(B).   Should the Court deem it appropriate, Defendants will request a list of all potential tests Dr. Glass might reasonably chose from to administer to Plaintiff noting however, that no such requirement was placed on Dr. Hayes, and Plaintiff has been unable to provide a similar protocol that was required of any of his treating physicians.

---

[70] *See Ragge v. MCA/Universal Studios,* 165 F.R.D. 605, 609 (C D. Cal. 1995) (holding that the examining defendant facing claims of sexual harassment, discrimination and retaliatory discharge need not disclose specific tests in advance of the examination; *see also McKissett v. Brentwood BWI One LLC*, No. WDQ-14-1159, 2015 U.S. Dist. LEXIS 162672, at *4-8 (D. Md. Dec. 4, 2015) (finding that the examiner's explanation that testing would consist of four hours of neuropsychological testing administered by a licensed psychometrist and several different interviews sufficiently informed the plaintiff and the Court about the sort of examination that would be conducted, and therefore, the examiner was not required to identify the full battery of tests that would be performed); *Bakhit v. Safety Marking, Inc.*, No. 3:13CV1049 (JCH), 2014 U.S. Dist. LEXIS 164531, at *2-4 (D. Conn. Nov. 25, 2014) (finding that since no evidence existed that the expert would "employ harmful or otherwise unorthodox examination techniques," there was no sound basis for "plaintiffs to object to the proposed testing."); *Mandujano v. Geithner*, No. C 10-01226 LB, 2011 WL 825728, at *4 (N.D. Cal. Mar. 7, 2011) (concluding that the government does not need to disclose in advance the precise tests it will use where the examining psychiatrist described at length the scope of the examination and the reasons for it); *Daigle v. Nabors Drilling USA, LP*, No. 050336, 2007 WL 580781, at *2 (W.D. La. Jan. 29, 2007) (finding that the examiner's explanation of the nature of the testing he planned to administer, which was designed to objectively assess common cognitive, psychological and emotional problems, was sufficient to satisfy the notice requirement of Rule 35; the examiner did not need to identify specific tests).
[71] *Ornelas v. Southern Tire Mart* LLC, 292 F.R.D. 388, 398 (S.D.TX 2013) (citing *Abduwali v. Washington Metro Area Transit Auth.*, 193 F.R.D. 10 (D.D.C. 2000) and *Lahr v. Fulbright & Jaworski, LLP*, 164 F.R.D. 196, 199 (N.D.Tex.1995).

## III.    CONCLUSION

Plaintiff injured his left hand and subsequently underwent a partial amputation of his left (non-dominant) pinky finger.  He was released to return to work within six months of his accident with no restrictions.  Since then, he has repeatedly alleged he has mental and emotional injuries that prevent him from returning to work in any capacity, negatively impacting his vocational options, future earning capacity and future medical expenses. His contention that his mental injuries prevent him from returning to work clearly place Plaintiff's mental state, future earning potential and future medical expenses in controversy. Defendants have met all the requirements under Fed. R. Civ. P 35 for an Order compelling Plaintiff to submit to a psychiatric examination, a life care plan expert interview and a vocational rehabilitation expert interview. Accordingly, Defendants respectfully request the Court order Plaintiff to submit to psychiatric evaluation by Dr. George S. Glass, M.D., P.A., an interview with Mr. Bryan Muench and an interview with Mr. Robert Cox well in advance of the Defendants' deadline for expert reports.

Respectfully submitted,

LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD

By: */s/ Todd G. Crawford*
Todd G. Crawford
Texas Bar No. 05041050
Adelaida J. Ferchmin
SDTX Bar No. 3466268
tcrawford@lawla.com
aferchmin@lawla.com
801 Travis Street, Suite 1800
Houston, Texas 77002
Telephone:  (713) 222-1990
Facsimile:  (713) 222-1996
*ATTORNEY FOR JACKSON OFFSHORE OPERATORS, LLC & CHEVRON U.S.A., INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of September, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Todd G. Crawford